**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA

**CRIMINAL ACTION**

VERSUS

**NO. 18-87-JWD-RLB**

RANDY J. LAMARTINIERE

**RULING AND ORDER**

This matter comes before the Court on the *Memorandum in Opposition to Notice to Offer Rule 404(b) Evidence* (Doc. 83) filed by Defendant Randy J. Lamartiniere ("Defendant"). The Court construes this brief as a motion in limine to exclude certain Rule 404(b) evidence listed by the United States (the "Government") in a prior notice filed into the record. (Doc. 75-1.) The Government replied to Defendant's motion and urged the admissibility of this evidence. (Doc. 96.) Oral argument was heard on June 15, 2021. (Doc. 98.) The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is denied in part and deferred in part.

## I.    Relevant Factual Background

### A.  The Indictment

Defendant is charged with 55 counts of unlawfully distributing and dispensing Schedule II controlled substances (namely, oxycodone). (Doc. 1.) Specifically, the Indictment alleges that, in or about March 2015 up to and including December 29, 2015, Defendant was a physician authorized to prescribe controlled substances in the State of Louisiana by the Louisiana State Board of Medical Examiners (the "State Board" or the "Board"). (*Id.* ¶ 2.) The Indictment further alleges that, during this time, Defendant, in exchange for cash, was willing to write medically unnecessary prescriptions for large quantities of oxycodone. (*Id.* ¶ 3.) His fee typically ranged

from $100 to $300 per visit, and he accepted no form of health insurance for "doctor visits" that routinely resulted in the issuance of a prescription for oxycodone. (*Id.*)  Thus, he purportedly distributed and dispensed controlled substances that were not for legitimate medical purposes and not in the usual course of a legitimate medical practice. (*Id.*)  The Indictment further claims that, beginning on December 30, 2015, Defendant's license to practice medicine was suspended, in part, in that the Board prohibited him from prescribing, dispensing, or administering controlled substances to any patient pending an administrative hearing on the revocation, suspension, or imposition of other terms regarding his license to practice medicine. (*Id.* ¶ 4.)

Counts One through Nine charge Defendant with knowingly and intentionally dispensing and distributing certain Schedule II substances to nine different patients (Patients A through I) on January 5, 2016, all in violation of 21 U.S.C. § 841(a)(1).

Counts Ten through Fifty-Five charge Defendant, a registrant authorized to dispense controlled substances, with knowingly and intentionally dispensing and distributing Schedule II controlled substances outside the scope of his professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 841(a)(1).  The Indictment specifically alleges forty-six different distributions of certain controlled substances to various patients (Patients J through Y) from June 5, 2015, to August 31, 2015.

### B.  Procedural History[1]

On January 8, 2020, the Government gave written notice of its intent to use four categories of Rule 404(b) evidence. (*See* Doc. 75 at 2 & Ex. A, Doc. 75-1.)  The details of this evidence will be discussed below.

---

[1] Most of this procedural history is set forth in the Government's reply brief, which does an exquisite job of detailing Defendant's untimeliness.  The Court find this untimeliness and failure to follow Court orders particularly egregious in this case.  However, the Court declines to deny Defendant's motion on this ground.

When the Government filed this first notice, the trial was set to start on March 9, 2020, and the deadline for any motion was February 24, 2020. (Doc. 40.)  Defendant filed no motion in limine concerning that evidence by the deadline.

On February 14, 2020, the Court continued the trial to March 30, 2020. (Doc. 49.)  The Court ordered motions in limine to be filed within 14 days of trial, or by March 16, 2020. (*Id.*). Defendant filed no such motions.

In March 2020, the Court again continued the trial until May 11, 2020. (Doc. 61.)  Motions in limine were due two weeks before trial. (*Id.*)  Again, Defendant filed no such motions.

In April 2020, the Court continued the trial to August 24, 2020, and set a new deadline for motions in limine of August 10, 2020. (Doc. 64.)  Defendant filed no such motions.

On July 15, 2020, the Court continued the trial to January 11, 2021, and gave a new motion in limine deadline of December 28, 2020. (Doc. 67.)  Again, Defendant filed no such motions.

Later, the Court continued the trial to April 27, 2021. (Doc. 70.)  Motions in limine were due 14 days before trial. (*Id.*)

On March 2, 2021, or roughly 8 weeks before trial, the Court held a status conference and discussed, *inter alia*, the status of Rule 404(b) evidence. (Doc. 79.)  The minute entry reflects: "Since the United States provided Rule 404(b) evidence to the defense on January 8, 2020, the Defendant will have **fourteen (14) days from today** to advise the Court if a hearing on Rule 404(b) evidence is needed by filing a written notice requesting a hearing into the record." (*Id.*) Defendant filed nothing in the record within that fourteen days.

Thus, by March 2021, 14 months had passed since the Government gave written notice of its intent to use Rule 404(b) evidence.  Defendant had filed no motion to exclude the evidence, and he filed no objection, despite being specifically ordered to do so.  As a result, on March 17, 2021,

the Government filed a notice for the record to confirm that no hearing was necessary and to supplement the record and minimize the risk of last-minute delays or delays during trial. (Doc. 82.)

Nevertheless, later on the same day, Defendant filed the instant *Memorandum in Opposition to Notice to Offer Rule 404(b) Evidence*. (Doc. 83.)   As will be discussed below, Defendant objected to two of the four categories of Rule 404(b) evidence.

Trial was continued to September 7, 2021. (Doc. 94.)   The hearing on this Rule 404(b) evidence was set for April 21, 2021, (Docs. 84, 94), but was subsequently moved by order of the Court to June 15, 2021, (Doc. 97).

### C.  The Crime at Issue

Again, Defendant is charged with numerous counts of unlawfully distributing and dispensing Schedule II controlled substances in violation of 21 U.S.C. § 841(a)(1).   "The [Controlled Substances Act, 21 U.S.C. § 801 *et seq.*,] states 'it shall be unlawful for any person knowingly or intentionally . . . (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance' ."   *United States v. Craig*, 823 F. App'x 231, 239 (5th Cir. 2020) (per curiam) (quoting 21 U.S.C. § 841(a)(1)), *cert. denied*, No. 20-1205, 2021 WL 1163788 (U.S. Mar. 29, 2021), *and cert. denied sub nom. Faithful v. United States*, No. 20-7204, 2021 WL 1163790 (U.S. Mar. 29, 2021).   "In that regard, ' "dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance' ."   *Id.* (quoting 21 U.S.C. § 802(10)).   "On the other hand, ' "distribute" means to deliver (other than by administering or dispensing) a controlled substance or a listed chemical'."   *Id.* (quoting 21 U.S.C. § 802(11)).

The Fifth Circuit has "upheld doctors' convictions 'for distributing a controlled substance under 21 U.S.C. § 841' when the Government proves: '(1) that [the doctor] distributed *or* dispensed a controlled substance, (2) that [the doctor] acted knowingly and intentionally, and (3) that [the doctor] did so *other than for a legitimate medical purpose and in the usual course of [the doctor's] professional practice*' ". *Craig*, 823 F. App'x at 240 (citing, *inter alia*, *United States v. Evans*, 892 F.3d 692, 703 (5th Cir. 2018) (alterations in original); *United States v. Oti*, 872 F.3d 678, 687 n.3 (5th Cir. 2017) ("Because [appellants] are all medical professionals and generally authorized to prescribe controlled substances, the [G]overnment also had to prove beyond a reasonable doubt that the distribution was other than in the course of professional practice and for a legitimate medical purpose." (citation omitted)); *see also United States v. Norris*, 780 F.2d 1207, 1208–09 (5th Cir. 1986) (citation omitted) (doctor).[2]  "The logical converse is that a practitioner is unauthorized to dispense a controlled substance if the prescription *either* lacks a legitimate purpose *or* is outside the usual course of professional practice." *United States v. Bennett*, 874 F.3d 236, 245 (5th Cir. 2017) (citation omitted).  "Stated differently, knowingly distributing prescriptions outside the course of professional practice is a *sufficient condition* to convict a defendant under

---

[2] As the Fifth Circuit said in *Craig*:

> Notably, "[a]lthough the [above-stated] third element is not expressly required by § 841", it follows from "pertinent regulations provid[ing] that a controlled substance can be dispensed by a prescription 'issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice' ". *Norris*, 780 F.2d at 1209 (quoting 21 C.F.R. § 1306.04(a) (1985)). Similarly, the present iteration of § 1306.04(a) states: a controlled-substance prescription is "effective" only if "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice"; and "a [purported] prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription". 21 C.F.R. § 1306.04(a) (2005).

*Craig*, 823 F. App'x at 240.

the criminal statutes relating to controlled substances." *Id.* (internal quotation marks and citation omitted).

### D. The Government's Proposed Rule 404(b) Evidence

The Government seeks to use the following Rule 404(b) evidence:

> 1. Defendant's [State Board's] records regarding the Board's formal investigation, beginning in 2015, that defendant was dispensing prescriptions without appropriate medical justification, in an unsafe manner, and in a manner not consistent with the Board's Pain Rules.
>
> 2. Defendant's [State Board's] consent order (to include defendant's acknowledgement and consent to said order) documenting defendant's license to practice medicine was partially suspended, effective December 30, 2015, to prohibit defendant from prescribing, dispensing, or administering Schedule II or III controlled substances (with the consent order describing the underlying reason for such prohibition, i.e., "prescribing, dispensing, or administering legally controlled substances . . . without legitimate medical justification therefore or in other that [sic] legal or legitimate manner. . . . ").
>
> 3. Ochsner Medical Center [("Ochsner")] personnel records concerning defendant and his reason for termination from [Ochsner] in 2014, i.e., overprescribing pain medications.
>
> 4. With respect to Counts Ten–Fifty-Five of the Indictment, all Schedule II prescriptions written to individuals identified as Patients J through W between the initial and end dates alleged in the Indictment for each patient. . . .

(Doc. 75-1 at 1.)

Defendant contests some but not all of these categories. Specifically, Defendant does not object to the fourth category. (Doc. 83 at 2 ("No 404(b) analysis is thus necessary as to the evidence identified in (4) in the government's notice.").)

Defendant also does not object to the second category. (*Id.*) He does not dispute that his license was suspended on December 30, 2015 and that he was barred from prescribing Schedule II and III controlled substances. (*Id.*) Defendant states that his actions (involving prescriptions

6

after that date) are relevant to Counts 1 through 9. (*Id.*)  Defendant states:

> The fact of suspension (2) is therefore not 404(b) evidence, though it may therefore be necessary to instruct the jury that they cannot consider the fact of the later suspension of his medical license as any sort of evidence of Dr. Lamartiniere's guilt on counts 10 through 55. The reasons underlying that suspension are not proper evidence.

(*Id.*)

Defendant does, however, dispute the first category (the State Board's investigation records) and third category (records from Ochsner reflecting Defendant's termination).  Thus, this evidence alone is at issue.

## II.  Discussion

### A.  Parties' Arguments

#### 1. The Government's Rule 404(b) Notice (Doc. 75-1)

The Government's Rule 404(b) notice simply lists the categories of evidence and says that they will be used to "demonstrate, *inter alia*, intent, knowledge, identity, and absence of mistake." (Doc. 75-1 at 2.)

#### 2. Defendant's Opposition (Doc. 83)

Again, Defendant responds by conceding that categories (2) and (4) are admissible. (Doc. 83 at 2.)  Defendant disputes categories (1) and (3). (*Id.*)  Defendant maintains that the Government fails to explain how the evidence is admissible under Rule 404(b). (*Id.*)  "The government must prove that Dr. Lamartiniere wrote the charged prescriptions, and that when he did so, he intentionally acted outside the usual course of professional practice or intentionally with no legitimate medical purpose." (*Id.* (citation omitted).)

Defendant then turns to the two-part test established in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) and argues that the evidence at issue fails this test. (*See* Doc. 83 at 3–5.) As to

the first category—the State Board's investigation of Defendant and finding that he dispensed prescriptions "without appropriate medical justification, in an unsafe manner, and in a manner not consistent with the Board's Pain Rules"—Defendant asserts this evidence will not be helpful to the jury because the State Board's "findings categorically do not touch upon the defendant having the same state of mind as the government is required to prove in order to secure a conviction in this case." (*Id.* at 4.)   The question of whether Defendant prescribed medication "without appropriate medical justification, in an unsafe manner, and in a manner not consistent with the Board's Pain Rules" has nothing to do with whether Defendant intentionally committed the offense under § 841. (*Id.*)

Likewise, the third category (Defendant's personnel records at Ochsner and why he was terminated) are also not relevant. (*Id.*) "That one medical center disagreed with Dr. Lamartiniere's prescribing practices in the past does not say anything about whether he intended to write the charged prescriptions outside the usual course of professional practice or without a legitimate medical purpose." (*Id.* at 5.)

Defendant then contends that both of these pieces of evidence would be unduly prejudicial under Rule 403. (*Id.*) The jury would be confused and prejudiced by any evidence that another organization found that Defendant was improperly prescribing drugs.   Further, such evidence would not be subject to cross examination and would confuse the burden of proof that the jury must apply—beyond a reasonable doubt. (*Id.*) None of the State Board's findings establish Defendant's intent for the crime in question. (*Id.*)  In sum:

> Allowing a jury to hear the results of inquiries from other bodies that used different standards makes it likely that the jury will be confused about which standard it to apply and that it may supplant what should be its independent decision with the decision of some other body that was not even considering the central question before the jury: the doctor's intent."

(*Id.*)  Consequently, Defendant urges that the Court exclude the State Board's finding and investigation as well as the fact of and reason for Defendant's termination by Ochsner. (*Id.* at 6.)

### 3. The Government's Reply Brief (Doc. 96)

The Government replies that (a) Defendant's motion is untimely, given his numerous failures to file motions in limine within the time limits set by the Court; and (b) in any event, all categories of documents are admissible. (Doc. 96 at 3.)

As to the first category, the Government argues: "The State Board's investigation and findings are directly relevant to the defendant's knowledge and intent, which, by all accounts, will be two of the central issues in the trial." (Doc. 96 at 4.)  The Government contends it must prove Defendant issued prescriptions "without a legitimate medical reason" or "beyond the course of professional practice," so "[i]n other words, the United States will have to present some evidence to explain what constitutes the usual course of professional practice, before presenting evidence that the defendant knowingly acted outside those parameters." (Doc. 96 at 4 (citations omitted).)  The Government relies on *United States v. Bennett*, 874 F.3d 236 (5th Cir. 2017), where the Fifth Circuit purportedly explained that the fact that defendant violated medical standards "helped clarify the scope and contour of 'outside the course of professional practice' – the very purpose for which the trial was being conducted." (Doc. 96 at 4–5 (quoting *Bennett*, 874 F.3d at 245).)

Further, Defendant requested a "good faith" instruction which would advise the jury to consider whether he "acted in accordance with what he reasonably believed to be proper medical practice." (*Id.* at 5 (quoting Doc. 58 at 4).)  Though the Government believes this instruction is improper, it demonstrates that, even according to Defendant, "the jury should consider what is 'proper medical practice' and whether the defendant 'reasonably believed' he was acting within such practice." (*Id.*)

The Government next argues that State Board's investigation is "highly relevant to an issue other than the [D]efendant's character." (*Id.*)  The State Board licenses, regulates, and disciplines providers in Louisiana. (*Id.*)  Thus, their findings and investigation can aid the jury in understanding what the "usual course" of a doctor's professional practice is and determine whether Defendant acted outside those parameters. (*Id.*)

This evidence is also relevant to Defendant's knowledge and intent. (Doc. 96 at 5.) According to the Government, this suspension did not involve "some administrative oversite" like "the failure to pay an annual registration fee" or "reasons having nothing to do with this the issues raised in this case." (*Id.* at 5–6.)  Rather, "the Board's investigation specifically focused on the defendant's prescriptions for controlled substances, and the Board notified the defendant in late 2015 that it was taking emergency action to stop him from continuing to prescribe opioids." (*Id.* at 6.)  According to the Government, "[t]his evidence is highly relevant to the defendant's knowledge and intent at the time, as he continued issuing prescriptions for opioids, often in exchange for cash, and even after losing his license." (*Id.* (citing *United States v. Jaszczult*, 330 F. App'x 367, 370 (3rd Cir. 2009); *United States v. Iglehart*, 687 F. App'x 333, 337-38 (5th Cir. 2017)).)

The Government then turns to Rule 403 and argues that the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. (*Id.*)  Though Defendant argues that the jury will confuse the appropriate standard to apply, any danger can be avoided by a limiting instruction. (*Id.* at 7.)  Further, this evidence will be subject to cross examination, as the Government "will present the Board's investigations and findings through representatives of the Board itself." (*Id.*)  "In short, the United States respectfully submits that the 404(b) analysis of this potential evidence weighs heavily in favor of its admission." (*Id.*)

As to the records related to Defendant's termination by Ochsner, the Government argues that many of the reasons articulated earlier apply with equal force here. (Doc. 96 at 7.)   The Government explains:

> The defendant worked for Ochsner Medical Center for several years, until late 2014. That fall, administrators specifically told the defendant that they had concerns about his overprescribing of pain medications and his unwillingness to refuse patients' requests for opioid pills. When the defendant would not comply with hospital directives, he was terminated, effective December 17, 2014. Within about three months, however, the defendant had opened up a new clinic, and he resumed issuing prescriptions for opioid pills, including some of the prescriptions specifically charged in the Indictment. (*See, e.g.*, Counts 12, 14, 21.)

(*Id.* at 7–8.)   Thus, his employer's raising of concerns about overprescribing and then its termination of Defendant partly as a result of those concerns also "help explain the generally recognized and accepted standards of medical practice." (*Id.* at 8 (citation omitted).)

Further, such evidence is relevant to knowledge and intent. (*Id.*)   By Defendant's own proposed good faith instruction, the jury must consider whether Defendant acted "in accordance with what he reasonably believed to be proper medical practice." (*Id.* (quoting Doc. 58 at 4).)

"Third, evidence of the defendant's termination is relevant for an additional, independent reason: it provides strong evidence of the defendant's motive to cut corners and write medically unnecessary prescriptions for pain pills in exchange for cash, as the Indictment specifically charges him with doing." (*Id.*)   Specifically, Defendant earned more than $180,000 before his termination and was the primary earner for his family, and, after his termination, he had no income. (*Id.*)   Thus, his termination and loss of income was "a strong financial motive to trade illegal prescriptions for cash." (*Id.*)   Thus, the first part of *Beechum* is satisfied. (*Id.* at 8–9 (citing *United States v. Williams*, 264 F.3d 561, 575 (5th Cir. 2001) ("Testimony regarding a specific change in Defendant's financial circumstances . . . is relevant to Defendant's motive and therefore admissible under Rule

404(b).")).)

According to the Government, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. (Doc. 96 at 9.) "The probative value is high—the evidence is very close in time to the start of the criminal conduct charged in the Indictment, and the evidence is relevant to the defendant's intent, knowledge, and motive." (*Id*.) Conversely, "there is very little risk of prejudice." (*Id.*) Again, the key question is whether the unfair prejudice "substantially outweighs" the probative value. (*Id.*) There is little reason to find that the jury would be unable to consider motive without giving the evidence due weight. (*Id.*) Further, because this evidence relates to an act and not a crime, "there is no risk that evidence will unfairly spill over and lead the jury to convict the defendant in this case based on evidence of some other crime." (*Id.*) Lastly, Defendant can challenge the evidence and cross-examine witnesses about the termination. (*Id.* at 9–10.) "In short, there is no reason to credit the defendant's speculation and prevent the jury from hearing this important evidence." (*Id.* at 10.)

In closing, the Government urges that the evidence described in its Rule 404(b) notice should be admissible at trial. (*Id.*)

### 4. Oral Argument

At oral argument, the parties largely re-urged the positions taken in their briefs. Such arguments were adequately summarized above and need not be repeated here.

### B.   The Standard Regarding Rule 404(b) Evidence Generally

Federal Rule of Evidence 404(b) provides that "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation,

plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

In *United States v. Beechum*, the Fifth Circuit "outlined a two-step test to determine the admissibility of evidence of a defendant's prior wrongful acts." *United States v. Cheramie*, 51 F.3d 538, 541 (5th Cir. 1995) (citing *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc)). "Under *Beechum*, evidence of extrinsic offenses is admissible if it is (1) relevant to an issue other than the defendant's character, and (2) the incremental probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant." *Cheramie*, 51 F.3d at 541 (citing *Beechum*, 582 F.2d at 911). In *United States v. Shaw*, 701 F.2d 367 (5th Cir. 1983), *abrogated on other grounds by Greer v. Miller*, 483 U.S. 756 (1987), the Fifth Circuit explained:

> Rule 404 is a rule of inclusion, which admits evidence of other acts relevant to a trial issue except where such evidence tends to prove only criminal disposition. The rule is exclusionary only as to evidence admitted to establish bad character as such; it very broadly recognizes admissibility of prior crimes for other purposes.

*Id.* at 386 (citations omitted)

### C. First *Beechum* Element: Relevance to an Issue other than Defendant's Character

#### 1. Applicable Law

In *Huddleston v. United States*, 485 U.S. 681 (1988), the issue was "whether the district court must itself make a preliminary finding that the Government has proved the 'other act' [referenced in 404(b)] by a preponderance of the evidence before it submits the evidence to the jury," *id.* at 682, and the Supreme Court found that "such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act," *id.* at 685. In its analysis, the Supreme Court stated:

> Federal Rule of Evidence 404(b)—which applies in both civil and criminal cases—generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as

motive, opportunity, or knowledge. Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.

*Id.* at 685.

In *Beechum*, the Fifth Circuit discussed the first prong of its analysis as follows:

The test for relevancy under the first step is identical to the one we have already encountered. The standards are established by rule 401, which deems evidence relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Where the evidence sought to be introduced is an extrinsic offense, its relevance is a function of its similarity to the offense charged. In this regard, however, similarity means more than that the extrinsic and charged offense have a common characteristic. For the purposes of determining relevancy, "a fact is similar to another only when the common characteristic is the significant one for the purpose of the inquiry at hand." Stone, The Rule of Exclusion of Similar Fact Evidence: England, 46 Harv. L. Rev. 954, 955 (1933). Therefore, similarity, and hence relevancy, is determined by the inquiry or issue to which the extrinsic offense is addressed.

Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense. See Weiss v. United States, 122 F.2d 675, 683 (5th Cir.), Cert. denied, 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550 (1941); 2 Wigmore, Evidence s 302 (3d ed. 1940).

*Beechum*, 582 F.2d at 911–12 (footnote omitted).

### *2. Analysis*

Having carefully considered the matter, the Court finds that the above two categories of evidence are highly relevant to several issues other than Defendant's alleged bad character and thus pass the first *Beechum* requirement.  The Court bases this finding on several grounds.

First, evidence of the Board's investigation into Defendant and evidence of his records from Ochsner (including those related to his termination) are highly relevant as to what constitutes prescribing "outside the usual course of professional practice." *Bennett*, 874 F.3d at 245. The Government's position is supported by *Bennett*, so an extensive discussion of this case is warranted.

There, defendant had been convicted of, *inter alia*, distributing and dispensing a controlled substance outside of professional practice. *Id.* at 242. On appeal, she complained that the district court failed to give a requested jury instruction[3] "thereby enabling the Government to prosecute for failure to adhere to medical regulations, rather than the crimes charged." *Id.* at 243. On appeal, the Government argued that, given the elements of the charged offense, "the jury was entitled to take into account accepted medical standards in determining whether a prescription was distributed outside of professional practice." *Id.* at 244.

The Fifth Circuit explained, "The heart of Ms. Bennett's argument, however, is that the court, in rejecting her proposed instructions, sanctioned a conviction based on Ms. Bennett's failure to adhere to medical regulations, rather than the elements of the crimes charged." *Id.* In

---

[3] The proposed jury instruction read:

> During the trial, you have received evidence regarding certain regulations, rules, and guidelines. Even though the use of a rubber stamp in lieu of a physician's signature and/or the failure to keep a medical chart when prescribing certain controlled substances and/or telephonically calling in a schedule II controlled substance to a pharmacy may be inappropriate or a violation of the rules, such an act is not done in violation of the offense unless it was done corruptly or if it was intended at the time it is done with the specific intent to violate the elements of the crime charges as set forth in these jury instructions.
>
> Furthermore, if the defendant has a good faith belief that she/he was acting in accordance with the proper rules, regulations and guidelines, then that good faith belief is a defense to the crime charged.

*Bennett*, 874 F.3d at 243.

rejecting this contention, the Fifth Circuit found this case analogous to *United States v. Brown*,

553 F.3d 768 (5th Cir. 2008):

> In *Brown*, we affirmed all but two counts of the convictions of pharmacists who engaged in a drug distribution conspiracy. [Brown, 553 F.3d at 801.] One pharmacist, like Ms. Bennett, argued that the "government worked a Due Process violation by transforming a violation of the regulations and guidelines of the [*Texas Pharmacy Laws and Regulations*] into a criminal offense." [*Id.* at 790.] We disagreed, finding that the government "both charged and proved a violation of the appropriate criminal statutes, not merely the related regulations" and thus drew a proper contrast between the "irreproachable, commonplace use of duly issued regulations in clarifying the scope and contour of criminal laws [and] the inappropriate replacement of criminal laws with civil regulations." [*Id.* at 791 & n.71.]

*Bennett*, 874 F.3d at 244–45.  The Fifth Circuit concluded:

> Our case is more akin to *Brown*. As noted above, the Government was required to prove: (1) that Ms. Bennett distributed a controlled substance; (2) that she did so knowingly and intentionally; and (3) that she did so other than for a legitimate medical purpose and in the usual course of professional practice. [*See Brown*, 553 F.3d at 781; *See also United States v. Armstrong*, 550 F.3d 382, 397 (5th Cir. 2008), *overruled on other grounds by United States v. Balleza*, 613 F.3d 432, 433 n. 1 (5th Cir. 2010).]  In *United States v. Armstrong*, we explained that the "third element is not expressly required . . . but relevant regulations provide that a controlled substance can be dispensed by a prescription 'issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.' " [*Armstrong*, 550 F.3d at 397.] "The logical converse is that a practitioner is unauthorized to dispense a controlled substance if the prescription *either* lacks a legitimate purpose *or* is outside the usual course of professional practice." [*Id.*]  Stated differently, "knowingly distributing prescriptions outside the course of professional practice is a *sufficient condition* to convict a defendant under the criminal statutes relating to controlled substances." [*Id.*] The medical regulations therefore helped clarify the scope and contour of "outside the course of professional practice"—the very purpose for which the trial was being conducted—and thus did not work a due process violation against Ms. Bennett. *See Brown*, 553 F.3d at 790–92 . . .]

*Id.* at 245.

Similar reasoning applies here.  Defendant is essentially making the same argument advanced in *Bennett*: that he will be unlawfully convicted for violating state regulations.  But, as *Bennett* recognizes, "[t]he medical regulations . . . help[] clarify the scope and contour of 'outside the course of professional practice'—the very purpose for which the trial [i]s being conducted." *Id*.  Thus, evidence of the Board's investigation into Defendant is highly relevant to an issue other than Defendant's bad character.

The same result is warranted with respect to Defendant's personnel records at Ochsner. The fact that another medical institution found Defendant's prescribing practices questionable (and ultimately terminated him because of those practices) has considerable probative value toward the question of whether he acted "outside the course of professional practice."

Second, for the same reasons, the Court finds that both categories of evidence bear heavily on Defendant's knowledge and intent.  According to the Government, Defendant continued to prescribe medicine after the Board notified him that it was taking emergency action to suspend his license and after he was terminated from Ochsner for such conduct.  The evidence in question has some tendency to show that Defendant knew his conduct was wrong and went beyond the ordinary practice of medicine. *See United States v. Jaszczult*, 330 F. App'x 367, 369–70 (3rd Cir. 2009) (rejecting argument that district court improperly admitted Rule 404(b) evidence that the state board was "coming down on" defendant doctor "based on a complaint that was filed against her for overprescribing medication" because "the evidence was relevant to demonstrate [defendant's] intent; the evidence that she decreased her rate of OxyContin prescription-writing after the complaint to the medical board showed that she knew her actions were wrong.").

Third, and finally, evidence related to Defendant's loss of employment is highly relevant as to motive.  As the Government asserts, this position is supported by *United States v. Williams*,

264 F.3d 561 (5th Cir. 2001). There, a former city councilman was convicted for conspiracy to commit extortion and solicitation of bribery payments concerning renewal of a contract to provide cable television to the city. *Id.* at 565–66. On appeal, defendant complained that evidence about his financial condition impermissibly showed "the mere fact that [he] [was] poor." *Id.* at 575. The Fifth Circuit found no error in the district court's admitting of this evidence and explained, "Testimony regarding a specific change in Defendant's financial circumstances goes beyond showing 'the mere fact that he is poor.' Such testimony is relevant to Defendant's motive and therefore admissible under Rule 404(b)." *Id.* (citation omitted). Likewise, here, Defendant's termination and subsequent loss of income bears heavily on why he may have committed the underlying offenses. Consequently, it easily satisfies the first *Beechum* element.

Defendant complains that the two disputed categories of evidence fail to satisfy the first *Beechum* requirement because the charged offenses require different states of mind than those applied by Ochsner and the Board. The Court disagrees. The Board's investigation was for "dispensing prescriptions without appropriate medical justification, in an unsafe manner, and in a manner not consistent with the Board's Pain Rules," and Ochsner terminated Defendant for "overprescribing pain medications." (Doc. 75-1 at 1.) Again, under § 841(a)(1), "a practitioner is unauthorized to dispense a controlled substance if the prescription *either* lacks a legitimate purpose *or* is outside the usual course of professional practice." *Bennett*, 874 F.3d at 245. Given the Fifth Circuit's reading of § 841(a)(1), Defendant's concern appears overblown and, as will be discussed below, can be addressed by a limiting instruction.

Again, "Rule 404 is a rule of inclusion, which admits evidence of other acts relevant to a trial issue except where such evidence tends to prove *only* criminal disposition. The rule is exclusionary *only* as to evidence admitted to establish bad character as such[.]" *Shaw*, 701 F.2d at

386 (emphasis added) (citations omitted).  In sum, Court finds that both groups of Rule 404(b) are highly relevant to issues other than Defendant's bad character.  They bear directly toward the question of "the usual course of professional practice," Defendant's knowledge and intent, and his motive.  Consequently, the Court finds that the first *Beechum* requirement is satisfied.

### D.  Second *Beechum* Element: Rule 403

#### 1. Applicable Law

"[If] the evidence is relevant for at least one of those permissible purposes [listed in Rule 404(b)], [the Court must] then determine whether, consistent with Rule 403, the evidence 'possess[es] probative value that is not substantially outweighed by its undue prejudice.' " *United States v. Crawley*, 533 F.3d 349, 354 (5th Cir. 2008) (quoting *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007)).  As *Beechum* explains:

> The legislative history indicates that Congress intended the admissibility of extrinsic offense evidence to be determined by the same standards as any other evidence, once the preliminary determination that the extrinsic offense is relevant to an issue other than the defendant's character has been made. Indeed, the Senate Committee Report evidences an intent carefully to delimit the trial judge's discretion to exclude extrinsic offense evidence. It states as follows:
>
> > (T)he use of the discretionary word "may" with respect to the admissibility of evidence of crimes, wrongs, or acts is not intended to confer any arbitrary discretion on the trial judge. Rather, it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i. e. prejudice, confusion or waste of time.
>
> S. Rep. No. 93-1277, 93rd Cong., 2d Sess. 24-25, Reprinted in (1974) U.S. Code Cong. & Admin. News 1974, pp. 7051, 7071.

*Beechum*, 582 F.2d at 910 n. 13.

This Court has also provided guidance on the second element of the *Beechum* test. Specifically, this Court has stated:

If relevant, 404(b) evidence is limited only by whatever strictures the rules themselves otherwise provide. Thus, at this stage, "the trial judge may exclude [relevant evidence of extrinsic acts] only on the basis of those considerations set forth in Rule 403, *i.e.,* prejudice, confusion or waste of time." [*Beechum*, 582 F.2d at 911.]

"In weighing the probative value and unfair prejudice, this court must make a 'commonsense assessment of all the circumstances surrounding the extrinsic offense.' Probative value 'must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference.' " [*United States v. Pruett*, 681 F.3d 232, 245 (5th Cir. 2012), quoting *United States v. Cockrell*, 587 F.3d 674, 678–79 (quoting *Beechum*, 582 F.2d at 914.)] Other factors to be considered include " 'the overall similarity of the extrinsic and charged offenses, and the amount of time that separates the extrinsic and charged offenses' as well as any limiting instructions." [*Id*., quoting *Cockrell*, 587 F.3d at 679 (quoting *United States v. Richards*, 204 F.3d 177, 199–201 (5th Cir.2000)).]

However . . . the Fifth Circuit has also held that "[o]ne of the dangers inherent in the admission of 'other acts' evidence is that the jury might convict the defendant 'not for the offense charged but for the extrinsic offense.' " [*United States v. Ridlehuber*, 11 F.3d 516, 521, quoting *Beechum*, 582 F.2d at 914.] This danger is "particularly great where . . . the extrinsic activity was not the subject of a conviction; the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged." [*Id*., quoting *Beechum*, 582 F.2d at 914.] To guard against this danger, Rule 404(b) excludes extrinsic offense evidence when it is relevant solely to the issue of the defendant's character. Even if the extrinsic act evidence is probative for "other purposes" recognized by Rule 404(b), such as showing motive or intent, the probative value of the evidence must be weighed against its prejudicial impact. [*Id.*]

*United States v. Reggie*, No. 13-111, 2014 WL 4418548, at *2–*3 (M.D. La. Sept. 8, 2014) (Dick, J.).

Lastly, as referenced above, *Beechum* also commented with approval on how the district "court was careful to allay, as much as limiting instructions can, the undue prejudice engendered by" the 404(b) evidence by giving "extensive instructions to the jury on the limited use of extensive offense evidence employed to prove unlawful intent." 582 F.2d at 917. The *Beechum* court specifically noted:

The Advisory Committee Notes to rule 403 require the judge to consider the

> effectiveness of a limiting instruction in reducing the prejudicial impact of evidence. "In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." 28 U.S.C.A. Rules of Evidence at 102-03 (1977). See also Fed. R. Evid. 105. This is a context in which limiting instructions are of substantial efficacy, United States v. Evans, 572 F.2d 455, 484-85 (5th Cir. 1978), and we think the judge adequately admonished the jury to consider the [404(b)] evidence solely on the issue of [defendant's] intent.

*Id.* at 917 n.23.

### 2. *Analysis*

Having carefully considered the matter, the Court will defer ruling on the Rule 403 analysis until trial. In doing so, the Court wishes to make three notes.

First, it is unclear from the motion the extent to which the Government intends to present the above two categories of evidence. The Government states, "At trial, the United States will present the Board's investigations and findings through representatives of the Board itself, and the defendant will have every opportunity to challenge the bases for the Board's findings and cross-examine the witnesses." (Doc. 96 at 7.) For the Ochsner records, the Government merely refers to "the witnesses through whom the evidence is presented." (*Id.* at 9-10.) It was unclear from oral argument how voluminous the records are and how long the Government intends to question these witnesses on these issues. To avoid any jury confusion, the Court cautions the Government that it will not permit a trial within a trial on these issues and that the Government should not go too far afield with this evidence.

Second, again, the above evidence is highly relevant, and, at this time, the Court does not believe that its probative value is *substantially* outweighed by the danger of unfair prejudice or confusion. Defendant complains about the possibility of confusion between on the one hand the different standards applied by Ochsner and the Board and on the other hand the one to be applied by the jury ("beyond a reasonable doubt"). Again, the Court finds that any such concerns or

prejudice can easily be remedied by an instruction acknowledging the different standards. *See Beechum*, 582 F.2d at 917 & n.23; *Reggie*, 2014 WL 4418548, at *4 ("the Court believes that the proper limiting instruction could cure any unfair prejudice relating to the introduction of this evidence."). The parties are given fourteen (14) days to propose any instruction (either jointly, if possible, or separately, if not) pertaining to Rule 404(b) evidence.

But, third, the Court will defer a final ruling until it has had an opportunity to hear the disputed evidence in the context of other evidence presented at trial. This will allow the Court to properly weigh unfair prejudice and to determine whether the Rule 404(b) evidence, is, for example, cumulative. *See Reggie*, 2014 WL 4418548, at *4 ("However, the Court will defer to trial a final determination of this matter, reserving the Defendant's right to argue unfair prejudice in light of the cases discussed above.").

### III. Conclusion

Accordingly

**IT IS ORDERED** that the *Memorandum in Opposition to Notice to Offer Rule 404(b) Evidence* (Doc. 83), which the Court construes as a motion in limine, filed by Defendant Randy J. Lamartiniere is **DENIED IN PART** and **DEFERRED IN PART**. The motion is **DENIED** with respect to the two undisputed categories of evidence in the Government's Rule 404(b) notice (Doc. 75-1), and this evidence is deemed admissible. The motion is also **DENIED** in that the two categories of disputed Rule 404(b) evidence (the State Board investigation and Ochsner personnel file) are highly relevant to issues other than Defendant's character and thus pass the first prong of the *Beechum* test. The motion is **DEFERRED** as to any Rule 403 analysis for this disputed evidence. The parties are given fourteen (14) days to confer and propose any instruction (either

jointly, if possible, or separately, if not) to cure any prejudice from the introduction of any Rule 404(b) evidence.

Signed in Baton Rouge, Louisiana, on <u>August 10, 2021</u>.


_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**